## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PABLO VELASCO-SANCHEZ,

                Petitioner,                     Case No. 2:25-cv-13730

v.                                        Hon. Brandy R. McMillion
                                            United States District Judge

KEVIN RAYCRAFT, *et al*,

                Respondents.

_____/

## OPINION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS (ECF NO. 1)

Petitioner Pablo Alexander Velasco-Sanchez ("Velasco-Sanchez" or "Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, alleging he is being unlawfully detained at the North Lake Correctional Facility in violation of the Immigration and Nationality Act ("INA"). *See generally* ECF No. 1. Velasco-Sanchez, an El Salvador citizen, is awaiting immigration proceedings to remove him from the United States. Despite having been in this country since 2016, raising two children who are U.S. citizens, and never engaging in criminal activity, Velasco-Sanchez is being held and denied a bond hearing, pending his removal proceedings. *Id.* For the reasons below, this Court finds that Velasco-Sanchez's detention without a bond hearing is unlawful, a violation of his due process rights, and orders his immediate release, or in the

alternative, a bond hearing within seven (7) days.  Accordingly, his Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

## I.

Velasco-Sanchez is a citizen of El Salvador, who entered and has resided within the United States since at least October 2016.  ECF No. 1, PageID.8; ECF No.7, PageID.128.  He is married to a United States citizen, has two young children who are both United States citizens; and has no criminal history.  ECF No. 1, PageID.2.  Velasco-Sanchez was originally apprehended "upon his initial entry in October 2016," and "released to his guardian approximately one month later."  ECF No. 1, PageID.8.  Nine years later, ICE officials arrested Velasco-Sanchez on November 7, 2025 and are holding him in DHS Custody at the North Lake Correctional Facility in Baldwin, Michigan.  ECF No. 7, PageID.129.

On November 21, 2025, Velasco-Sanchez filed a petition for habeas corpus before this Court, pursuant to 28 U.S.C. § 2241.  ECF No. 1.  His Petition alleges violations of the INA and the Fifth Amendment Due Process Clause.  *See id.* at PageID.17–19.  Velasco-Sanchez argues that as a noncitizen residing in the United States, charged as inadmissible for having initially entered the country without inspection, 8 U.S.C. § 1226(a) allows for his release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate his risk of flight and dangerousness.  *See generally* ECF Nos. 1, 8.  The Government asserts that under 8

U.S.C. § 1225(b)(2)(A), Velasco-Sanchez is properly detained because he falls in a category of noncitizens that the statute mandates be detained pending removal proceedings.  *See generally* ECF No. 7.  Velasco-Sanchez seeks immediate release from custody or, in the alternative, a bond hearing.  ECF No. 1, PageID.19.

Velasco-Sanchez's Petition has been fully briefed.  *See* ECF Nos. 7, 9.  The Court has reviewed the filings and finds that the issues have been adequately briefed; therefore, a hearing is unnecessary.  *See* E.D. Mich. L.R. 7.1(f)(2).  As the Petition is now ripe for decision, the Court will rule on the record before it.  *Id*.

## II.

Before turning to the merits of the Petition, the Court must first address two preliminary issues: (1) who are the proper respondents to this litigation; and (2) certification of the nationwide class in *Bautista v. Santacruz*, No. 5:25-cv-01873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

### *Proper Respondents*

Petitioner files this action against Kevin Raycraft ("Raycraft"), Acting Field Director of Enforcement and Removal Operation ("ERO"), Detroit Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General ("Bondi"); the Executive Office for Immigration Review ("EOIR"); and Angela Dunbar, Warden, North Lake Processing Center ("Dunbar").  Relying on two other

courts in this district, the Government contends that Petitioner's claim should only be brought against Dunbar as the warden of Petitioner's detention facility; and accordingly, jurisdiction over this matter is only vested in the Western District of Michigan. *See* ECF No. 7, PageID.131 (citing *Aguilar v. Dunbar*, ---F. Supp.3d---, No. 2:25-cv-12831, 2025 WL 3281540, at *2–7 (E.D. Mich. Nov. 13, 2025) (transferring immigration habeas case to Western District) (White, J.); *Quintero-Martinez v. Raycraft*, 2:25-cv-13536 (E.D. Mich. Nov. 19, 2025), ECF No. 9 (same) (Murphy, J.)).  Both of those cases rely on *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004), in holding that the warden of Petitioner's detention facility is the immediate physical custodian of Petitioner, and therefore the one who can be subject to a habeas corpus action.  *Aguilar*, 2025 WL 3281540, at *3.  However, another court in this district has found (as the Government argued in response to similar previous habeas petitions), that based on *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), ICE Field Director Raycraft and U.S. Attorney General Bondi are the proper named parties to this action because they control the release of Petitioner.  *See Romero Garcia v. Raycraft*, No. 4:25-cv-13407, 2025 WL 3252286, at *3, *5 (E.D. Mich. Nov. 21, 2025) (Behm, J.).

This Court agrees with the reasoning in *Romero Garcia*.  There, the court found that

> In *Roman*, the Sixth Circuit held that the INS District Director for the district where a detention facility is located is the proper respondent for

a petitioner facing removal proceedings, because the District Director has power over that petitioner.  In *Padilla*, the Supreme Court rejected that logic of legal "power" over a person's physical custody as a general matter and held that in habeas, the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official. However, while setting a general rule, the Court explicitly left open the question of whether a remote supervisory official is a proper respondent to a habeas petition filed by an alien detained pending deportation. Courts in this district and circuit have therefore found that specifically for habeas proceedings with petitioners facing deportation, *Roman*'s rule still applies, because application of that rule was explicitly left open by *Padilla.*

*Romero Garcia*, 2025 WL 3252286, at *2.  Likewise, as the *Romero Garcia* court found, this Court too finds that Petitioner is facing removal proceedings and Raycraft controls the release of Petitioner.

Nothing presented to this Court suggests that Dunbar, as warden of the detention facility, has any power to release Petitioner without a directive from Raycraft.  Dunbar has no involvement whatsoever in a bond hearing.  And because any action taken by Dunbar, would be at the sole direction of Raycraft, the Court finds that, at a minimum, the petition is properly filed against Raycraft.  But, because Dunbar does maintain physical custody of Petitioner, albeit at the direction of Raycraft, a suit against her is also appropriate under *Padilla*.  Keeping U.S. Attorney General Bondi in the case is also warranted to ensure that Respondents maintain authority to enforce any grant of habeas relief and order that Petitioner receive a

bond hearing or, alternatively, be released even if Petitioner is transferred out of the district under Raycraft's control. *Romero Garcia*, 2025 WL 3252286, at *5.

Accordingly, the Court will dismiss the Petition against all Respondents except for Raycraft, Bondi and Dunbar (who will hereinafter be referred to as "Respondent" or the "Government"). Given that Raycraft remains a respondent in this case, the Court sees no need to transfer this petition to the Western District of Michigan.

*Bautista v. Santacruz* Nationwide Class

On November 25, 2025, the Central District of California issued a series of orders in a similar habeas case challenging petitioners' confinement without a bond hearing under the INA. Like nearly all courts to address the issue, that court also held that petitioners were entitled to a bond determination hearing under 8 U.S.C. § 1226(a). *Maldonado Bautista v. Santacruz,* ---F.Supp.3d----, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861, at *11. But more importantly, the California court certified a Rule 23(b)(2) class for:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.* at *9. Velasco-Sanchez falls within this class. *See* ECF No. 8, PageID.163; ECF No. 10, PageID.196–197.

Here, Velasco-Sanchez argues that Respondent is bound by the declaratory relief granted to class members nationwide in *Maldonado Bautista*.  ECF No. 10, PageID.195.  But the Government is taking the position that because no final order has been issued in that case, it is not binding, and immigration judges can ignore its directive.  *Id.* at PageID.196 (citing Pltfs.' Ex. Parte App. for Reconsideration and Clarification, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 4, 2025), ECF No. 87 at 7-10, PageID.1528–31); *see also* ECF No. 8, PageID.164.

The Government likewise has asserted that because Petitioner is a member of the *Maldonado Bautista* class, the Court should dismiss or, in the alternative, stay this action.  ECF No. 8, PageID.163.  But as Petitioner points out, the Government is again seeking to have it both ways—they argue that the *Maldonado Bautista* class-wide declaratory judgement somehow moots out Petitioner's distinct claims for habeas relief, yet the government also claims that the *Maldonado Bautista's* court decision does not have a preclusive effect on this case.  ECF No. 10, PageID.194.  Both cannot be true.  But the Court need not reach that determination because in either instance, a grant of habeas relief is appropriate.

The *Maldonado Bautista* court reached the same conclusion as this Court in determining the applicability of Sections 1225 and 1226 to noncitizens present in the country who were arrested and detained without a bond hearing.  *See* 2025 WL

3289861, at *10–11. And for those reasons, as well as those detailed below, the petition for habeas corpus is granted.

## III.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Velasco-Sanchez seeks habeas relief arguing he is being unlawfully detained in violation of the INA, because the mandatory detention provision at "Section 1225(b)(2) does not apply to Petitioner, who previously entered the country and has long been residing in the United States prior to being apprehended and placed in removal proceeding by Respondents." ECF No. 1, PageID.17.

Congress established two statutes which principally govern detention of noncitizens pending removal proceedings. 8 U.S.C. §§ 1225 and 1226. The first – Section 1225 – is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." The use of "the word 'arriving' indicates that the statute governs 'arriving' noncitizens, not those present already." *See Barrera v. Tindall*, No. 3:25-cv-00541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (citing *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *5 (E.D. Mich. Sep. 9, 2025)). And here, the title of the statute is instructive and "especially valuable [where] it reinforces what the text's nouns and verbs independently

suggest." *Barrera*, 2025 WL 2690565, at *4 (citing *Yates v. United States*, 574 U.S.

528, 552 (Alito, J., concurring in judgment)).

This section is a mandatory detention provision that states, in relevant part:

> **(2)** **INSPECTION OF OTHER ALIENS**
> **(A)  In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  Key to the issues raised here, Section 1225 applies to

"applicants for admission," who are noncitizens "present in the United States who

[have] not been admitted or who arrive[] in the United States" 8 U.S.C. § 1225(a)(1).

Upon arrival, all applicants for admission must undergo screening by an examining

immigration officer, and if it is determined that the applicant for admission "is not

clearly and beyond a doubt entitled to be admitted," they "***shall*** be detained for"

standard removal proceedings.  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The

only exception to this mandatory detention provision is for noncitizens who are

released "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. §

1182(d)(5)(A).

The second statutory provision – Section 1226, titled: "Apprehension and

detention of aliens" – provides for a discretionary detention framework, and states,

in relevant part:

**(a)** **A**RREST, **DETENTION, AND RELEASE**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1)  may continue to detain the arrested alien; and

(2)  may release the alien on—

(A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a).  Subsection (c) of Section 1226 prohibits certain noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted (like Petitioner) from being released on bond, *but only if* the noncitizen has also been:

charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E)[1].  Relevant here, noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (*i.e.*, a bond hearing) before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

---

[1] This section that subjects certain noncitizens to mandatory detention was added by Congress in January 2025 with the passing of the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

**IV.**

**A.    ADMINISTRATIVE EXHAUSTION**

At the outset, Respondent's argue that the Court should require Velasco-Sanchez to exhaust his administrative remedies (*e.g.*, appeal the IJ's decision to deny him a bond hearing to the BIA), before proceeding with his habeas petition.  *See* ECF No. 7, PageID.133-134.  The Court disagrees exhaustion is necessary.

"Where Congress specifically mandates, exhaustion is required."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991).  But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court.  *Id.*; *see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).  Exhaustion requirements not written into the text of the statute are prudential.  *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994).  "Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not."  *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

In determining when to require prudential exhaustion, courts apply the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193-95 (1969)), which weighs whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

11

> (3) administrative review is likely to allow the agency to correct
> its own mistakes and to preclude the need for judicial review.

*See Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015).  Here, all three factors weigh against requiring exhaustion.  First, the issues raised in the habeas petition are purely legal in nature and do not require the agency to develop the record.  Second, because Velasco-Sanchez's habeas petition includes a due process claim, the administrative scheme (*i.e.*, appeal to the BIA) would be futile.  And third, administrative review is not likely to change Respondent's position that Section 1225(b)(2)(A) applies in this context.

While the Court would ordinarily enforce the exhaustion doctrine when it serves the dual purpose of promoting judicial economy and protecting administrative agency authority, waiver is appropriate when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks.  *See McCarthy*, 503 U.S. at 145; *see also Fazzani v. NE Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006) (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001) and *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir. 1982)); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981).  Exhaustion is also excused when delay means hardship.  *See Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000).

Exhaustion would be futile because a bond appeal before the BIA would take too long.  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (finding BIA bond appeals on average take six months to complete).  So, its senseless to require Velasco-Sanchez to wait six months for the BIA to reach a decision on whether he is entitled to a bond hearing, when a removal determination would likely come before that decision.

And as further evidence of futility, the Government itself points out, Velasco-Sanchez is "ultimately unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects petitioner's arguments in this case."  *See* ECF No. 7, PageID.133-134.[2]  Consequently, any administrative remedy would leave Velasco-Sanchez without recourse; and therefore, should be excused.  *See Shawnee Coal*, 661 F.2d at 1093 (recognizing that administrative exhaustion may be excused if it would be futile).  It's unmistakable that waiver is appropriate because depriving Velasco-Sanchez of

---

[2] While BIA decisions may be binding upon the agency at large, they are not binding on this Court. *See* 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] …are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."); *see also Sulivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (noting agency rulings are binging on all components of the agency itself but not federal courts); *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (discussing interruption of laws is the solemn duty of the judiciary).

his liberty while awaiting a BIA appeal decision certainly equates to hardship, and any delay results in the very harm Velasco-Sanchez is trying to avoid by seeking the bond hearing – detention. *See Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025).

Aside from waiver, the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted). Since Velasco-Sanchez's Petition includes a due process claim, an appeal to the BIA would be pointless.

Furthermore, this Court and many others have waived exhaustion in similar proceedings. *See, e.g.*, *Shweika*, 2015 WL 6541689, at *13; *Lopez-Campos v. Raycraft*, ---F. Supp. 3d----, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025). And this Court has previously held, "[w]hen the liberty

of a person is at stake, every day that passes is a critical one, and the Court cannot fault [a detainee] for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 2025 WL 2496379, at *5; *see also Diaz-Sandoval v. Raycraft et al.*, No. 2:25-cv-12987, 2025 WL 2977517, at *6 (E.D. Mich. Oct. 17, 2025); *Pacheco Mayen v. Raycraft*, No. 2:25-cv-13056, 2025 WL 2978529, at *6 (E.D. Mich. Oct. 17, 2025); *Contreras-Cervantes v. Raycraft et al.*, No. 2:25-cv-13073, 2025 WL 2952796, at *6 (E.D. Mich. Oct. 17, 2025); *Santos Franco v. Raycraft*, No. 2:25-cv-13188, 2025 WL 2977118, at *5 (E.D. Mich. Oct. 21, 2025); *Casio-Mejia v. Raycraft*, No. 2:25-cv-13032, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025). The same holds true for Velasco-Sanchez.

Hence, because exhaustion would be futile and unable to provide Velasco-Sanchez with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition.

## B.   STATUTORY INTERPRETATION

The Court then turns to the central question in this case, like it and so many other courts have had to do in recent months. Which detention framework properly applies to a El Salvador citizen, who has lived in the United States since 2016, was never lawfully admitted to the country, encountered ICE ERO Officers over nine

years after his arrival, and has now been arrested?  Velasco-Sanchez says Section

1226(a), and the Government says Section 1225(b)(2)(A).  This Court has previously

ruled that Section 1226(a) applies and finds the facts of this case warrant the same

result.  *See Lopez Campos*, 2025 WL 2496379, at *8; *see also Diaz-Sandoval*, 2025

WL 2977517, at *9; *Pacheco Mayen*, 2025 WL 2978529, at *9; *Contreras-*

*Cervantes*, 2025 WL 2952796, at *8; *Santos Franco*, 2025 WL 2977118, at *9;

*Casio-Mejia*, 2025 WL 2976737, at *8.

For the past 30 years, the Government has applied Section 1226(a) in seeking

detention in this context.  But now that the Government's immigration policy has

changed, and Section 1225(b)(2)(A) is more favorable, it wants the Court to declare

that the historical application of Section 1226(a) is incorrect.  That, the Court will

not do.  The plain language of the statutes, the overall structure, the intent of

Congress, and over 30 years of agency action make clear that Section 1226(a) is the

appropriate statutory framework for determining bond for noncitizens who are

already in the country and facing removal.

In harmonizing Sections 1225 and 1226 of the INA, the Court must interpret

the meaning of the statutes that apply at the time of inspection by immigration

officials and at the time of apprehension.  "A statute should be construed so that

effect is given to all its provisions[.]"  *Corley v. United States*, 556 U.S. 303, 314

(2009); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts

"must give effect to the clear meaning of statutes as written."). Each word within the statute must be given "'it's ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky,* 23 F.4th at 603 (citing *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997); *Graham Cnty. Soil & Water Conservation Dist. et al. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005)). "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012). Courts must also "use every tool at their disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). In doing so here, the Court must determine whether Velasco-Sanchez is lawfully detained under Section 1225(b)(2)(A), as Respondent claims. And the Court finds he is not.

The plain text of Section 1225(b)(2)(A) and Section 1226(a) do not support Respondent's contention that "§ 1225(b)(2) requires mandatory detention for noncitizens who fall within its terms until the conclusion of their administrative proceedings and detaining a noncitizen under § 1226(a), which allows release on bond, would nullify the mandatory detention required by § 1225(b)(2)." ECF No. 7, PageID.144. Section 1225(b) applies to "Inspection for applicants for admission," and subsection (1) governs "Inspection of aliens ***arriving in*** the United States and certain other aliens who have not been admitted or paroled," whereas Section 1226,

on the other hand, applies to the "[a]pprehension and detention of aliens."  *Compare*

8 U.S.C. § 1255(b) *with* § 1226(a).  While not binding, statutory headings/titles are

instructive and provide the Court with the necessary assurance that it is at least

applying the right part of the statute in a given circumstance.  *See Merit Mang. Grp,*

*LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018); *Dubin v. United States*, 599

U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute

and the heading of a section are tools available for the resolution of a doubt about

the meaning of a statute.").  Here, it is as simple as looking to which statute makes

the most sense – was Velasco-Sanchez arriving and being inspected, or was he

apprehended and detained.  The facts could not be clearer that it was the latter.

Looking to Section 1225(b)(2)(A), when dealing with "inspection and

removal of arriving aliens," immigration officials "shall" detain "an applicant for

admission, if the examining immigration officer determines that an alien seeking

admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. §

1225(b)(2)(A).  Respondent argues that the term "applicant for admission" is defined

as any "unadmitted noncitizens present in the United States," and therefore applies

to anyone here unlawfully, even if they are already physically present—regardless

of the length of time they have been present.  *See* ECF No. 7, PageID.135 (citing 8

U.S.C. § 1225(a)(1)).  They similarly argue that "seeking admission" is an inquiry

of seeking a "lawful entry."  *Id.* at PageID.136.  Thus, "[a] noncitizen's previous

unlawful physical entry has no bearing on this analysis." *Id.* So, under Respondent's interpretation, Section 1225(b)(2)(A) requires detention of any noncitizen "present" in the country who has not been lawfully admitted. As it concerns Velasco-Sanchez, this interpretation is much too broad.

The Court finds that Section 1225(b)(2)(A) applies when people are being inspected, which usually occurs at the border, when they are seeking lawful entry into this country. Much like the petitioner in *Lopez-Campos*, Velasco-Sanchez was arrested by ICE within the United States, after arriving nine years earlier. There is no logical interpretation that would find that Velasco-Sanchez was actively "seeking admission" after having resided here, albeit unlawfully, for almost a decade. So, the applicability of Section 1225(b)(2)(A) would be incorrect.

In contrast, looking to the plain language of Section 1226, when dealing with "apprehension and detention of aliens," upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This provision is clearly applicable, as Velasco-Sanchez encountered ICE ERO Officers, then they arrested and detained him. He is pending removal proceedings in the Immigration Court, therefore the Attorney General, "may continue to detain" and "may release on bond." *Id.* While this language is discretionary, the statute provides that the noncitizen has the right to request a custody redetermination (*i.e.*, bond hearing)

before an IJ – which is precisely what Velasco-Sanchez has done.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

Notably, Respondent previously released Velasco-Sanchez, *see* ECF No. 1, PageID.8, and the Government does not cite to anything to support its new interpretation that his current arrest is under Section 1225(b)(2)(A).  To hold otherwise, would allow the Government to sweepingly apply a provision of the INA that is inapplicable, and the Court is not willing to do that.  Years after having initially released Velasco-Sanchez, and following his rearrest on November 7, 2025, Respondent now claims his detention was under Section 1225(b)(2)(A).  The Court cannot credit this new position that was adopted post-hac, despite clear indication that Velasco-Sanchez was not detained under this provision when he was first encountered in 2016.  *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").[3]  And nearly every, if not all, courts addressing this very issue have held the same.[4]

---

[3] *See Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025).

[4] *See e.g. Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025) ("DHS cannot convert the statutory authority governing . . . detention from [Section 1225(b)] to [Section 1226(a)] through the post-hoc issuance of a warrant." (citing *Matter of Q. Li*,

The Supreme Court has looked at these statutes and clarified that they apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'" *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157-DLR-CDB, 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025) (citing *Jennings*, 583 U.S. at 287). Whereas Section 1226(a) applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal. *Jennings*, 538 U.S. at 288. Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country." *Id*.

Looking to the facts of this case, it is undisputed that Velasco-Sanchez, by definition, is a noncitizen "present in the United States who has not been admitted or paroled." 8 U.S.C. § 1182(a)(6)(A). Under these circumstances, it cannot be said that Section 1225(b)(2)(A) applies to him. Velasco-Sanchez was not "arriving to the country." Quite the contrary, he was arrested while present and "already in the

---

29 I. & N. Dec. 66, 69 n.4 (BIA 2025)); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025) ("[S]ection 1125(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statues."); *Lopez Benitez*, 2025 WL 2371588, at *5 ("The Court cannot credit Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation.").

country," having lived here for nearly a decade, making Section 1226 applicable. *See Jennings*, 538 U.S. at 288; *see also Lopez-Campos*, 2025 WL 2496379, at *8.

Further, if Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework. The Laken Riley Act added a subsection to Section 1226 that specifically mandated detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Velasco-Sanchez), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) ***and*** have been arrested for, charged with, or convicted of certain crimes. *See* 8 U.S.C. § 1226(c)(1)(E). Respondent's interpretation of the statutes would render this recently amended section superfluous. As another court recently held,

> [W]hile Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2). *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* ..., the Attorney General ... *may*" (emphases added)). "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like [Velasco-Sanchez], who are subject to Section 1226(a). *Jennings*, 583 U.S. at 300 (citing A. SCALIA & B. GARNER, READING LAW 107 (2012)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

*dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).  "If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless" and this Court, too, "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)."  *Maldonado v. Olsen*, ---F. Supp.3d----, No. 0:25-cv-03142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025).

There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-five years and was already within the United States when he recently encountered and was apprehended and arrested by ICE ERO.  The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).  *See* ECF No. 1-5 (including a list of 288 decisions collected in *Demirel v. Federal Detention Center*, No. 25-5488, Appendix, ECF. 11-1 (E.D. Pa. Nov. 18, 2025)).  Therefore, the Court finds that Velasco-Sanchez is not subject to the provisions of Section 1225(b)(2)(A).  Rather, he clearly falls under the provision of Section 1226(a) and is subject to the discretionary bond determination outline therein.

C.    **DUE PROCESS**

Finally, Velasco-Sanchez argues that his continued detention is a violation of due process – and the Court agrees.

The Fifth Amendment guarantees the right to be free from deprivation of life, liberty or property without due process of law.  U.S. CONST. amend. V.  Liberty is one of the most basic and fundamental rights afforded and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The Due Process Clause extends to all "persons" regardless of status, including noncitizens (whether here lawfully, unlawfully, temporarily, or permanently).  *Id.* at 693; *see also Reno v. Flores*, 507 U.S. 292, 306 (1993); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *4 (6th Cir. Jan. 18, 2023).

Respondent does not dispute that Velasco-Sanchez is entitled due process, rather the Government argues that it afforded the process due under Section 1225(b)(2)(A) when Velasco-Sanchez "was given notice of the charges against him, he has access to counsel, he has attended a hearing with an immigration judge, he has requested bond, he has the right to request bond and appeal any bond decision by the immigration court, and he has been detained by ICE for a matter of months." *See* ECF No. 7, PageID.132.  The Supreme Court has held that "[due process] under

the constitution is coextensive with the removal procedures provided by Congress[.]" *Id*. at PageID.131 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020)).   However, having found that Section 1226(a) governs Velasco-Sanchez's detention, the Government's assessment fails and the process due to a non-citizen that is apprehended and detained is that which is afforded under Section 1226(a) – a bond hearing.   Here, the IJ did not conduct a bond hearing.

In evaluating due process in the context of civil confinement, the Court looks to (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail.  *Mathews v. Eldrige*, 424 U.S. 319 (1976); *see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020).   All three factors weigh in favor of affording Velasco-Sanchez a detention hearing.  First, his liberty is at stake.  Second, the risk of erroneously depriving him of his freedom is high if the IJ fails to assess his risk of flight and dangerousness.  And third, on the record currently before the Court, given the history and characteristics of this Petitioner, the Government has not and likely cannot show that it has a significant interest in Velasco-Sanchez's continued detention.

Accordingly, the Court agrees that detention of Velasco-Sanchez under the mandatory detention framework is a violation of his due process rights.

### V.

As this Court has previously stated:

> Section 1226(a) of the INA recognizes that the core and "most elemental of liberty interests" is to be free from restraint and physical detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). For centuries, the Government has acted in accordance with these principles. The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair. In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests.

*Lopez-Campos*, 2025 WL 2496379, at *10. The plain language of both Sections 1226(a) and 1225(b)(2)(A) mandate a finding that Velasco-Sanchez is entitled to a detention hearing pending his removal proceedings. Because the Immigration Court is in the best position to evaluate Petitioner's risk of non-appearance and dangerousness, this Court leaves to its sound discretion a determination on that issue.

Accordingly, the Court **DISMISSES** the Petition against Respondents Kristi Noem and EOIR. Velasco-Sanchez's Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**. Respondent is **HEREBY ORDERED** to immediately release Velasco-Sanchez, or in the alternative, provide him with a bond hearing under 8 U.S.C. § 1226(a) within five (5) days of the date of this Order.

**IT IS FURTHER ORDERED** that Respondent is **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondent shall file a Status Report with this Court on or before December 17, 2025, to certify compliance with this Order. The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

Dated:  December 11, 2025          s/Brandy R. McMillion
        Detroit, Michigan            HON. BRANDY R. MCMILLION
                             United States District Judge